**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE**

**NEAL HYNEMAN, on behalf of himself**      **CIVIL ACTION NO.**
**and all others similarly situated,**         **2:21-cv-02427-TLP-cg**

           **Plaintiff**

**Versus**

**AUTOZONE, INC.,**

           **Defendant**

**MEMORANDUM IN SUPPORT OF
<u>MOTION TO DISMISS CLASS ACTION COMPLAINT</u>**

This memorandum is submitted on behalf of Defendant AutoZoners, LLC ("AutoZone"), incorrectly referred to in the Class Action Complaint as AutoZone, Inc., in support of its Motion to Dismiss Class Action Complaint.

## INTRODUCTION AND SUMMARY

The Class Action Complaint ("Complaint") (Rec. Doc. 1) brought by Neal Hyneman ("Plaintiff") should be dismissed for either of two reasons. First, the Complaint is essentially a copycat of another putative class action complaint filed six months earlier in the United States District Court for the Eastern District of New York, *Keith Confusione and Randolph Brannigan, on behalf of themselves and all others similarly situated v. AutoZoners, LLC,* Case no.: 2:21-cv-00001-JMA-AYS. The two cases involve similar, if not identical, parties and issues.  Both cases are putative class actions brought on behalf of classes of New York "manual workers" employed by AutoZone or one of its subsidiaries based on an alleged violation of a unique New York "frequency of payment" wage provision in New York Labor Law ("NYLL") § 191.[1] Thus, as the Sixth Circuit has recognized under nearly identical circumstances, the "first-to-file" rule applies. This Court has discretion to dismiss this case, but at the very least it should be transferred to the Eastern District of New York or stayed pending resolution of that first filed action in New York.

Second, and in the alternative, this matter should be dismissed for failure to state a claim under FRCP 12(b)(6). Plaintiff asserts a NYLL § 191 frequency-of-pay claim based on the fact that AutoZone paid them bi-weekly, instead of weekly. However, Plaintiff's § 191 claims fails as a matter of law because the NYLL does not provide a private right of action for wages that are fully paid albeit not on a weekly basis. *See* NYLL § 198(1)(1-a) ("In any action instituted in the

---

[1] NYLL § 191 states, in part, that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned. . ." NYLL § 191(1)(a)(i).

courts upon a wage claim by an employee … in which the employee prevails, the court shall allow such employee to recover the full amount of any **underpayment** ….") (emphasis added). Thus, Plaintiff has no private right of action under NYLL § 191.

## BACKGROUND

## I.  THE PRESENT ACTION

The Complaint in the present matter was filed by Plaintiff on June 24, 2021 against AutoZone. Rec. Doc. 1. The gist of the Complaint is that "New York Law requires companies to pay their manual workers on a weekly basis unless they receive an express authorization to pay on a semi-monthly basis from the New York State Department of Labor Commissioner." Complaint, ¶ 2. According to Plaintiff, AutoZone "has violated and continues to violate this law by paying its manual workers every other week rather than on a weekly basis." *Id.* at ¶ 5.

Plaintiff alleges that he was "employed by Defendant as a commercial driver from September 2015 to May 2021 at an AutoZone location in Evans Mills, New York." *Id.* at ¶ 11.[2] Plaintiff states that "[a]pproximately 80% of Plaintiff's job responsibilities at AutoZone included manual labor, including tasks such as shelving stock, pulling and delivering parts for orders, and cleaning and organizing the store. Plaintiff was paid every other week, rather than weekly, during the entirety of his employment with Defendant." *Id.*

Plaintiff brings his claims both individually and as a class representative. He seeks to represent a class "defined as all persons who worked as manual workers in their employment for Defendant in the State of New York from six years preceding this Complaint to the date of class notice in this action (the 'Class')." *Id.* at ¶ 12. Plaintiff claims that the key common questions for

---

[2] Plaintiff noticeably does not allege his place of residence or citizenship, but presumably it is New York inasmuch as that is where he alleges he was employed by AutoZone.

class certification are "whether [AutoZone] was required to pay class members on a weekly basis, whether class members were paid on a weekly basis, and whether Defendant violated NYLL § 191." Complaint, ¶ 14.

The Complaint has one count entitled "New York Labor Law – Failure to Pay Timely Wages." Complaint, p. 4. In the count, Plaintiff alleges that AutoZone "failed to pay Plaintiff and the Class on a timely basis as required by NYLL § 191(1)(a)." *Id.* at ¶ 20. As remedies, Plaintiff seeks certification under FRCP 23, an order declaring AutoZone's conduct a violation of the law, damages, interest and attorney's fees. *Id.* at Prayer for Relief.

## II.  THE FIRST-FILED NEW YORK ACTION

On January 2, 2021, about six months before the present action was filed, Keith Confusione and Randolph Brannigan filed an essentially identical putative class action in the United States District Court for the Eastern District of New York against AutoZoners, LLC ("AutoZoners").[3] *See Confusione v. AutoZoners, LLC.,* Civil Action No. 21-0001 (E.D.N.Y.) (the "New York Action"), attached as Exh. 2.

Like Plaintiff in the present action, the *Confusione* plaintiffs bring the New York Action because of AutoZoners' alleged "violations of New York Labor Law § 191 . . ." Exh. 2, ¶ 1. "Defendant [allegedly] failed to properly pay Plaintiffs and other hourly-paid Manual Workers their wages within seven calendar days after the end of the week in which these wages were earned. Thus, Defendant [allegedly] failed to provide timely wages to Plaintiffs and other similar Manual Workers." Exh. 2, ¶ 8.

Mr. Confusione and Mr. Brannigan both allege that they are residents of New York, that

---

[3] AutoZoners is a subsidiary of AutoZone.  *See* Declaration of Patrick Johnson, attached as Exh. 1, at ¶ 4.

they were each employed by AutoZoners as a "manual worker," and that AutoZoners failed to pay them "'on a weekly basis and not later than seven calendar days after the end of the week in which the wages are earned" as required by New York Labor Law § 191.'" Exh. 2, ¶¶ 13-14, 16-17, 20-24. "Instead, Defendant paid Plaintiff and similarly situated persons who have worked in hourly-paid positions as sales clerks, delivery drivers and maintenance technicians on a bi-weekly basis pursuant to its payroll policy in violation of New York Labor Law § 191." *Id.* at ¶ 24.

Mr. Confusione and Mr. Brannigan also bring their claims individually and on behalf of a class "consisting of all persons who are currently, or have been, employed by the Defendant in hourly-paid positions such as retail-sales clerks, delivery drivers and maintenance technicians in the State of New York at any time during the six (6) years prior to the filing of this Complaint . . ." *Id.* at ¶ 26. They define the common questions for certification as whether "Defendant paid Plaintiff and Class Members on a bi-weekly or semi-monthly basis in violation of Labor Law section 191 and the nature and extent of the Class-wide injury and the appropriate measure of damages for the class." *Id.* at ¶ 30.

The New York Complaint contains two claims for relief – the first of which is identical to the lone claim in the present action.  The first clam is entitled "Frequency of Payment Violation," and alleges that AutoZoners violated NYLL § 191 by failing to pay "Plaintiffs and Class Members on a weekly basis." Exh. 2, ¶ 42. The New York Complaint also contains a second claim that is not at issue in the present Complaint (alleging a "wage statement" violation under NYLL § 195(1)). Exh. 2, ¶ 45. As remedies, Mr. Confusione and Mr. Brannigan seek class certification under Rule 23, a declaratory judgment that AutoZoners' practices are unlawful, damages, interest and attorney's fees.  Exh. 2, Prayer for Relief.

<u>**ARGUMENT**</u>

**I.   THE COMPLAINT SHOULD BE DISMISSED UNDER THE "FIRST-TO-FILE" RULE**

    **A.   <u>First-to-File Standards</u>**

The "first-to-file" rule is firmly established in the Sixth Circuit, particularly in the context of competing or overlapping putative class actions such as exists in the present circumstances. In *Baatz v. Columbia Gas Trans., LLC,* 814 F.3d 785 (6th Cir. 2016), the Sixth Circuit set out the standards that should be applied for the first-to-file rule. It began by describing the purpose of the rule:

> The first-to-file rule is a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts. Simply stated, it provides that, "when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should *generally* proceed to judgment.'" *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.,* 511 F.3d 535, 551 (6th Cir. 2007) . . .; *see Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ("As between federal district courts, ... the general principle is to avoid duplicative litigation."). This rule "encourages comity among federal courts of equal rank." *Zide Sport Shop,* 16 Fed. Appx. at 437 . . . . It also conserves judicial resources by minimizing duplicative or piecemeal litigation, and protects the parties and the courts from the possibility of conflicting results. . . .

814 F.3d at 79 (emphasis in original); *see also Heyman v. Lincoln Nat'l Life Ins. Co.,* 781 Fed.Appx. 463, 476 (6th Cir. Jul. 18, 2019) (same). The *Baatz* court then established a three-part test to govern practical application of the rule:

> . . . courts generally evaluate three factors: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake.

814 F.3d at 789; *see also Heyman,* 781 Fed.Appx. at 476; *Collier v. Med-Care Investment*, 2018 U.S. Dist. LEXIS 87519, *8 (M.D. Tenn. May 24, 2018).

Finally, *Baatz* explained that, even if the three factors are met, the court has discretion not to apply the first-to-file rule if certain equitable considerations weigh against it:

> If these three factors support application of the rule, the court must also determine whether any equitable considerations, such as evidence of 'inequitable conduct, bad faith, anticipatory suits [or] forum shopping,' merit not applying the first-to-file rule in a particular case.

814 F.3d at 789. However, the Sixth Circuit later classified these equitable considerations as "rare or extraordinary." *Heyman*, 781 Fed.Appx. at 478. Indeed, courts have a "duty" to apply the first-to-file rule when appropriate. *Cook v. E.I. DuPont de Nemours & Co.,* 2017 U.S. Dist. LEXIS 122436, *18 (M.D. Tenn. Aug. 3, 2017).

**B.  <u>Application of the Three Factor Test to This Case</u>**

Many courts within the Sixth Circuit have applied the first-to-file rule to either dismiss, transfer or stay second-filed actions, particularly in the context of competing putative class actions.[4] Indeed, this Court addressed the nearly identical circumstance in *Mitchell v. Wells Fargo Bank, N.A.,* 2020 U.S. Dist. LEXIS 238542 (W.D. Tenn. Dec. 18, 2020), where this Court applied the first-to-file rule, transferring a second-filed putative class action from this district to the Western District of Pennsylvania.

The three-part test supports application of the first-to-file rule here:

<u>Chronology</u>.  For the first part of the test, relating to the chronology of events, "'the dates to compare for chronology purposes of the first-to-file rule are when the relevant complaints are filed.'" *Mitchell,* 2020 U.S. Dist. LEXIS 238542 at *6 (*quoting Baatz,* 814 F.3d at 790). In the present circumstances, this factor weighs in favor of applying the first-to-file rule inasmuch as the

---

[4] *See, e.g., Samataro v. Keller Williams Realty, Inc.,* 2021 U.S. Dist. LEXIS 12027, *7 (E.D. Mich. Jan. 22, 2021); *Collier,* 2018 U.S. Dist. LEXIS 87519; *Cook,* 2017 U.S. Dist. LEXIS 122436 at *5; *McLaughlin Chiropractic Assoc. v. McKesson Corp.,* 2013 U.S. Dist. LEXIS 35263, *4 (E.D. Tenn. Mar. 14, 2013); *Fryda v. Takeda Pharm, N.A., Inc.,* 2011 U.S. Dist. LEXIS 42221, *12 (N.D. Ohio Apr. 13, 2011); *Long v. CVS Caremark Corp.,* 2010 U.S. Dist. LEXIS 3150, *3 (N.D. Ohio Jan. 14, 2010).

New York Action was undeniably filed approximately six months before the Complaint in the present action. *See also Heyman*, 781 Fed. Appx. at 476 (favoring the first-to-file rule when the copycat lawsuit was filed six months after the first lawsuit).

Parties.  The second factor examines the "similarity of the parties."  This factor "does not require that the parties in the competing lawsuits be *identical*." *Baatz*, 814 F.3d at 790 (emphasis in original). "[T]hey just need to overlap." *Mitchell,* 2020 U.S. Dist. LEXIS 238542 at *7. Particularly in the class action context, courts look at "'whether there is a substantial overlap'" between the putative classes in the two actions. *Id.*

This requirement is met here. The named plaintiffs bring their claims in the same capacities in both cases. They bring their claims as New York "manual workers" who allegedly were not paid as frequently as required by NYLL § 191. Complaint, ¶¶ 2, 14, 20; Exh. 2, ¶¶ 7, 9, 24, 31. Moreover, the class definitions in the two cases do not merely overlap, they appear to be essentially the same (New York manual workers employed by AutoZone or AutoZoners over the preceding six years). Complaint, ¶ 12; Exh. 2, ¶¶ 26, 28, 29. Likewise, the defendants in the two actions are, from a practical standpoint, identical—AutoZone in the present case, and one its subsidiaries in the New York Action. Thus, the "similarity of the parties" factor is clearly met.

Issues and Claims.  The third factor looks at the "similarity of the issues or claims at stake." As with the test for the "similarity of the parties," the "issues or claims" need not be identical for the first-to-file rule to apply. The issues or claims merely should "substantially overlap." *Heyman,* 781 Fed. Appx. at 477; *Mitchell,* 2020 U.S. Dist. LEXIS 238542 at *11.

The present action only has one claim – the failure to timely pay wages under NYLL § 191. Complaint, ¶¶ 19-21. This is exactly the same as the first claim in the New York Action. Exh. 2, ¶¶ 45-46. In addition, the Complaints in both cases allege the same common questions for purposes

of class certification (that is, whether AutoZone and AutoZoners paid the class members on a bi-weekly basis in violation of NYLL § 191). Complaint, ¶ 14; Exh. 2, ¶ 30.  The issues and the claims in the two actions are the same.  Thus, the three-factor test is satisfied here.

**C.  No Equitable Considerations Weigh Against Application of the First-to-File Rule**

The equitable considerations focus on whether AutoZone did something improper that would prevent application of the first-to-file rule (such as "'extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping'"). *Mitchell*, 2020 U.S. Dist. LEXIS 238542 at *12. Clearly, AutoZone did nothing of the sort. Indeed, if anything, Plaintiff seems to have gone out of his way to file suit here instead of in New York which has the greatest connection to the allegations (*i.e.*, New Yorkers suing over their employment in New York on a unique New York legal provision). *See Heyman*, 781 Fed. Appx. at 478 ("Here, no equitable considerations render application of the rule improper. Indeed, it is [plaintiff], not [defendant], who engaged in forum shopping . . ."). Put simply, all equitable considerations weigh in favor of applying the first-to-file rule in this proceeding.

**D.  This Court Has Discretion to Dismiss This Case**

As the remedy under first-to-file rule, courts have the discretion to either dismiss, transfer or stay the second filed action. *Mitchell*, 2020 U.S. Dist. LEXIS 238542 at *13. In *Baatz,* the court emphasized that "[p]roviding the district court discretion to dismiss a duplicative action fits with the purposes of the first-to-file rule and the need for the district court to have discretion in managing its docket." 814 F.3d at 793; *see also Long*, 2010 U.S. Dist. LEXIS 3150 at *12 (dismissing the second filed action under the first-to-file rule).

The *Baatz* court determined that dismissal was inappropriate there because dismissal "could adversely affect" the plaintiff's rights, so the court remanded for the district court to determine an alternative remedy. 814 F.3d at 794. This Court followed a similar path in *Mitchell,*

where the Court decided to transfer the second filed action instead of dismissing it. 2020 U.S. Dist. LEXIS 238542 at *14.

AutoZone acknowledges that dismissal is not appropriate in every circumstance, but if ever it were appropriate (as *Baatz* recognizes), this is the case. This case is effectively a copycat of the New York Action. Plaintiff would not be prejudiced by dismissal because he falls within the putative class definition in the first filed New York Action. There are no extenuating circumstances that weigh against dismissal.

Alternatively, AutoZone asks that this case be transferred to the Eastern District of New York or stayed pending resolution of the claims in the New York Action.

## II. IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Out of an abundance of caution, and in the alternative, AutoZone also moves to dismiss the Complaint for failure to state a claim under FRCP 12(b)(6).

### A. The 12(b)(6) Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In other words, a complaint must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678. Moreover, "[p]lausibility is not the same as probability, but rather 'asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) ("CBER") (quoting *Iqbal*, 556 U.S. at 678). And "[a]lthough a court must construe a complaint's allegations in favor of the plaintiff, . . . and must accept all factual

allegations as true, . . . the court need not accept legal conclusions or unwarranted factual inferences." *Debevec v. GE*, 121 F.3d 707, *2 [published in full-text format at 1997 U.S. App. LEXIS 21630] (6th Cir. 1997) (table) (internal citations omitted).

**B. <u>Plaintiff Cannot State A Section 191 Frequency-Of-Pay Claim</u>**

Plaintiff claims he is a "manual worker" within the meaning of Section 191(1)(a)(i) of the NYLL, and therefore AutoZone violated Section 191 by paying him on a bi-weekly—as opposed to a weekly—basis. Complaint, ¶¶ 2, 14, 20. Plaintiff does not claim to have suffered - and does not claim to seek - any actual damages (as none exist), but instead requests liquidated damages, attorneys' fees and costs, and interest. Complaint, ¶¶ 6, 21; Prayer for Relief. But even assuming *arguendo* that Plaintiff was a "manual worker" (a proposition AutoZone strenuously disputes),[5] his claim fails because Section 191 does not provide a private right of action for employees who have no claim for unpaid wages. In other words, where a plaintiff concedes all wages were paid, but were supposedly paid untimely, Section 191 affords no private right of action, and no basis for a recovery.[6]

**1. Title 6 Of The NYLL (Which Includes Section 191) Does Not Afford A Private Right Of Action For Untimely Paid Full Wages**

---

[5] The NYLL defines a "manual worker" as a "mechanic, workingman or laborer." NYLL § 190(4). Under Section 191, "manual workers" are to be paid on a weekly basis. *Id.* at § 191(a). On the other hand, Section 191 provides that "clerical and other workers" may be paid on a bi-weekly or semi-monthly basis. *Id.* at § 191(d).

[6] This, of course, is not to say that such an employee is without any remedy whatsoever. As explained *infra*, the plaintiff, if properly deemed a manual worker, can seek recourse through the Commissioner of the New York Department of Labor. NYLL § 196-a. In response to employee wage complaints, the Commissioner is authorized to conduct investigations, and bring suit against employers who are found to have violated Title 6's provisions (Title 6 incorporates Section 191). *Id.* at § 196. In such actions, the Commissioner is authorized not only to collect the wages due, but also recover civil penalties and liquidated damages. *Id.* at §§ 218-219. As noted *infra,* this is precisely the sort of public function the Department of Labor has been providing to New York workers since the Great Depression.

Section 191 is codified within Section 6 of the NYLL, which vests exclusive responsibility for the enforcement of its provisions in the Commissioner of the Department of Labor *except in two limited circumstances*. NYLL § 191(1)(a)(ii), 196; *see also Ikea U.S. v. Indus. Bd. of Appeals*, 241 A.D.2d 454, 455, 660 N.Y. S.2d 585, 586 (2d Dep't 1997) (affirming Labor Commissioner's administrative determination that employer violated the frequency-of-pay provisions of § 191(a) by paying manual workers on a bi-weekly basis).

The two exceptions where Title 6 specifically and expressly creates private rights of action are both contained in Section 198.  *First*, Section 198 provides:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount ***of any underpayment***, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its ***underpayment of wages*** was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of ***the total amount of the wages found to be due*** . . . .

NYLL § 198(1-a) (emphasis added). *Second,* Section 198 also provides that an employee may "recover in a civil action" statutory damages for his employer's failure to provide her with proper wage statements or a wage notice at the time of her hiring. *Id.* at § 198(1-b), (1-d). These are the only instances specified in the statute. Therefore, Section 198, by its own terms, does not provide a private remedy for the late payment of ***full*** wages, but only a private cause of action for the "underpayment of wages." NYLL § 198(1-a).

Numerous state and federal courts in New York have recognized that neither Section 198 nor Section 191 authorize an employee to bring a private right of action to recover damages and other relief because his employer paid him in full, but on a supposedly untimely bi-weekly basis. *See, e.g.*, *Hussain v. Pak. Int'l Airlines Corp.*, No. 11-cv-932 (ERK)(VVP), 2012 WL 5289541, at *3 (E.D.N.Y. Oct. 23, 2012) ("The NYLL contains no provision for private recovery for violations of its

provisions regarding frequency of payment" under § 191(1)(a)(i) of the NYLL); *Hunter v. Planned Bldg. Servs*., No. 715053/2017, 2018 WL 3392476, at *2 (Queens Sup. Ct. June 20, 2018) (same); *Phillips v. Max Finkelstein, Inc*., 66 Misc.3d 514, 115 N.Y.S.3d 866, 869 (Suffolk Sup. Ct. Dec. 12, 2019) (no private right of action exists for mere frequency-of-pay § 191(1)(a)(i) violations); *Gardner v. D&D Elec. Constr. Co*., No. 160249/2018, 2019 WL 3765345, at *2 (New York Sup. Ct. Aug. 9, 2019) (a plaintiff "cannot bring an independent action to enforce the substantive provisions of" § 191 in cases where "he was paid in full prior to the commencement of this action"); *Hunter*, 2018 WL 3392476, at *2 (A "plaintiff has no private right of action under NYLL § 198(1-a) for a frequency of payment violation of NYLL § 191(1)(a)(i) where there is no claim for unpaid wages."); *Belizaire v. RAV Investigative & Sec. Servs.*, 61 F.Supp.3d 336, 360 n.22 (S.D.N.Y. 2014); *see also, e.g.*, *Arciello v. County of Nassau*, No. 16-cv-3974 (ADS)(SIL), 2019 WL 4575145, at *8 (E.D.N.Y. Sept. 20, 2019) (collecting cases, and noting "[c]ourts in the Southern District of New York and this District have opined that the NYLL may not contain ... a remedy for the failure to timely pay overtime wages").

Here, Plaintiff does not claim that AutoZone "underpaid" him the full wages he was due. Instead, Plaintiff claims those wages were paid late - - on a bi-weekly basis, instead of weekly. However, without a claim for any actually unpaid wages, Plaintiff has no private right of action under the plain and express terms of Sections 191 or 198.

### 2. The Few Decisions Finding A Private Right Of Action To Exist Cannot Be Squared With The Language Of Title 6 Or Well-Established Principles Of Statutory Construction

In response, Plaintiff will likely claim that case law concerning the availability of a private right of action to pursue frequency-of-pay claims is not uniform. For example, New York state trial and intermediate appellate courts are divided on whether to recognize a private right of action for

frequency-of-pay violations, even where it is clear that all wages due have been paid. *Compare, e.g.*, *Vega v. CM & Assocs. Constr. Mgmt.*, 175 A.D.3d 1144, 1146, 107 N.Y.S.3d 286, 288 (1st Dep't 2019) ("Labor Law § 198(1–a) expressly provides a private right of action for a violation of Labor Law § 191," even if "there are no wages for the employee to recover") *with Phillips*, 115 N.Y.S.3d at 869-70 (noting "this court is not bound to follow the rule of law enunciated in *Vega*," and concluding "that actual payment of wages in full albeit on a bi-weekly basis where the law requires payment on a weekly basis does not constitute an 'underpayment' that would trigger an employee's right to commence a lawsuit" under § 198) and *Kruty v. Max Finkelstein,* 65 Misc.3d 1236, 119 N.Y.S.3d 831 (Table), 2019 WL 6910141, at *2 (Suffolk Sup. Ct. Dec. 12, 2019) (concluding that *Vega*'s determination regarding the existence of a private right of action for frequency-of-payment claims even where full wages have been paid conflicts with the implied holding of the Appellate Division, Second Department's decision in *Ikea US*, that frequency-of-payment claims unaccompanied by proof of unpaid wages do not constitute "underpayments" within the meaning of NYLL § 198(1-a)).

Typically, courts that have somehow found that a private right of action exists for frequency-of-pay claims unaccompanied by proof of unpaid (as opposed to untimely-paid) wages reason that although Sections 191 and 198 may not expressly provide for such a right of action, such a right can be implied from the statutory scheme. *See Scott*, 2019 WL 1559424, at *3 ("Even if § 191 does not expressly authorize a private action one may be implied ..."); *Sorto v. Diversified Maint. Sys.*, No. 20-cv-1302, 2020 U.S. Dist. LEXIS 216328, at *3-6 (E.D.N.Y. Nov. 15, 2020) (concluding that a private right of action can be implied under § 191, "even if the statute may not fairly be read to expressly provide one").

However, well-established principles of statutory construction preclude creating a right of

private action for claims concerning untimely paid full wages by judicial implication. A private

right of action may only be found "if a legislative intent to create such a right of action is fairly

implied in the statutory provisions and their legislative history." *Cruz v. TD Bank*, 22 N.Y.3d 61,

70, 979 N.Y.S.2d 257, 262, 2 N.E.3d 221, 226 (N.Y. 2013). This requires consideration of "(1)

whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2)

whether recognition of a private right of action would promote the legislative purpose; *and* (3)

whether creation of such a right would be consistent with the legislative scheme." *Sheehy v. Big

Flats Cmty. Day*, 73 N.Y.2d 629, 432 N.Y.S.2d 18, 20, 541 N.E.2d 18, 20 (N.Y. 1989) (emphasis

added). "Critically, all three factors must be satisfied before an implied private right of action will

be recognized." *Haar v. Nationwide Mut. Fire Ins. Co*., 34 N.Y.3d 224, 229, 115 N.Y.S.3d 197,

200, 138 N.E.3d 1080, 1084 (N.Y. 2019). The third factor is the "most critical," *Carrier v.

Salvation Army*, 88 N.Y.2d 298, 302, 644 N.Y.S.2d 678, 681, 667 N.E.2d 328, 329 (N.Y. 1996),

because a private right of action will not be inferred "where the Legislature specifically considered

and expressly provided for enforcement mechanisms in the statute itself." *Cruz*, 22 N.Y.3d at 71,

N.Y.S.2d at 262, 2 N.E.3d at 227 (partial quotation omitted). *Accord Olmsted v. Pruco Life Ins.

Co. of New Jersey*, 283 F.3d 429, 433 (2d Cir. 2002) (the "explicit provision of a private right of

action to enforce one section of a statute suggests that omission of an explicit private right to

enforce other sections was intentional").

      Here, given the clear absence of language providing for a private right of action, it cannot

be "fairly implied" into either Section 191 or 198 for frequency-of-pay claims unaccompanied by

proof of unpaid wages. This is because the second and third factors cannot be met based on the

clear structure and language of both statutes. Section 191 contemplates that the Labor

Commissioner would police violations of its frequency-of-payment provisions. NYLL § 191(a)(i)-

(ii); *see also Ikea US*, 241 A.D.2d at 455, 660 N.Y.S.2d at 586. Section 196 expands on the powers of the Labor Commissioner to enforce the terms of Section 191, including by, *inter alia*, affording the Labor Commissioner with the power to investigate frequency-of-pay violations, to sue employers on frequency-of-pay claims that employees assign to the Labor Commissioner, and to demand a bond from employers who have been found to have violated Section 191's provisions. NYLL § 196. Section 196-a establishes a procedure for aggrieved employees to file complaints with the Labor Commissioner for investigation, including over late paid wages. NYLL § 196-a. Sections 197, 218 and 219 establish civil penalties for violations of Section 191, which can only be recovered by the Labor Commission "in any legal action necessary, including administrative action or a civil action." NYLL § 197; *accord Id.* at §§ 218-219. And, Section 198 authorizes remedies through a civil suit for proven claims of unpaid wages, but **not** for full wages untimely paid. *Hussain*, 2012 WL 5289541, at *3.

Thus, in adopting Section 6 of the NYLL, which incorporates Sections 190 through 198, the Legislature created a carefully crafted administrative mechanism for enforcement of Section 191 violations that incorporates a process for aggrieved employees to file administrative complaints and for the Labor Commissioner to pursue legal action against their employers to address the employees' concerns. It very easily could have provided for a private right of action as well. It did not. Accordingly, no broader private remedy can be read into Sections 191 or 198 other than that explicitly provided for in Section 198 itself. *See Cruz*, 22 N.Y.3d at 71, N.Y.S.2d at 262, 2 N.E.3d at 227 (no private right of action can be inferred "where the Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself."); *see also Uhr v. East Greenbush Cent. School. Dist.*, 94 N.Y.2d 32, 40-42, 698 N.Y.S.2d 609, 613-14, 720 N.E.2d 886, 890 (N.Y. 1999) (declining to infer existence of a private right of action to enforce Education Law § 905(1) because

the Legislature created a statutory scheme for administrative enforcement of its provisions); *Mark G. v. Sabol*, 93 N.Y.2d 710, 720-21; 695 N.Y.S.2d 730, 733-34, 717 N.E.2d 1067, 1071-72 (N.Y. 1999) (same, with respect to provisions of the Child Welfare Reform Act of 1979).

Accordingly, any decisions permitting a private right of action under Section 191 for claims concerning the untimely payment of full wages represent a departure from the statute itself and from the courts' wider jurisprudence concluding that the only private rights of action that exist to enforce Title 6's terms are those expressly set forth within Section 198's terms.

Additionally, the text and legislative history of Sections 191 and 198 do not support the existence of a private right of action to enforce frequency-of-pay claims with no underpayment of wages. To the contrary, the legislative history surrounding Section 191 demonstrates that both the Legislature and Department of Labor viewed Section 191 as the source of the Department's authority to aid various categories of workers in the recovery of wages through Title 6's administrative process, and not as a source of additional actionable private rights beyond those expressly set forth in Section 198.

Section 191 was previously codified as Section 196 of the Labor Law of 1909. In 1935, an amendment to Section 196 was introduced at the Department of Labor's request. As explained in the supporting statement, the amendment was designed to extend application of Section 196's wage protections to all forms of business, and not just to corporations and joint-stock associations, and thereby address the problem at the time of individuals forming unincorporated or partnership entities "to perform one or two contracts, defer the payments of wages to their employees for prolonged periods and then shut up shop and disappear" entirely. *See* Decl. of Patrick Johnson at Ex. A (Bill

Jacket 1935 Ch. 619 at p. 5).[7] In a memorandum to the Governor, New York's Industrial Commissioner explained that the amendment was "imperative," because the Department of Labor otherwise lacked statutory authority to aid employees making "wage collection complaints involv[ing] the individual or copartnership type of employer" (*Id.* at Ex. A, p. 10). There is no mention whatsoever about a potential private right to recovery.

The Legislature revisited Section 196 in 1956, again at the Department of Labor's request. The supporting statement explained the purpose of the amendment was to "permit the Department of Labor to assist typists, stenographers, clerks, and other office workers in the collection of their unpaid wages in the same manner that the Department assists manual workers." *See* Patrick Johnson Decl. at Ex. B (Bill Jacket 1956 Ch. 539 at p. 5). In a memorandum to the Governor dated March 28, 1956, New York's Solicitor General explained that the amendment would "bring[] within the provisions of the Labor Law, as they relate to the requirement for payment of wages and salaries, persons other than mechanics, workingmen, laborers and commission salesmen" (*Id.* at Ex C., p. 13). And in a memorandum to the Governor, New York's Industrial Commissioner explained that "[u]nder present law, the Department of Labor's authorization to assist in the collection of unpaid wages is limited to 'employees' within the meaning of the Labor Law, that is, to mechanics, laborers or workingmen. This bill would extend the Department's authority to wage claims of all employed individuals" (*Id.* at Ex. B., p. 22). Once again, the history is clear that the focus is on the Department

---

[7] Historical Bill Jackets are maintained by the New York State Library, and are made publicly available (and judicially noticeable) on its website at https://nysl.ptfs.com/knowvation/app/consolidatedSearch/#search/v=list,c=1,q=qs%3D%5B*%5D%2Cfacet-fields%3D%5Bbrowse1_ss%3A%22All%20Government%20Collections%22%3E%3Ebrowse2_ss%3A%22New%20York%20State%20Legislative%20Bill%20Jackets%22%3E%3Ebrowse3_ss%3A%7Bempty%7D%3E%3Ebrowse4_ss%3A%7Bempty%7D%3E%3Ebrowse5_ss%3A%7Bempty%7D%3E%3Ebrowse6_ss%3A%7Bempty%7D%3E%3Ebrowse7_ss%3A%7Bempty%7D%3E%3Ebrowse8_ss%3A%7Bempty%7D%3E%3Ebrowse9_ss%3A%7Bempty%7D%3E%3Ebrowse10_ss%3A%7Bempty%7D%3E%3Efacet-fields-limit%3A100%5D%2CqueryType%3D%5B16%5D,sm=s,l=library1_lib

of Labor with no mention whatsoever of a private right to recovery.

The Department of Labor again encouraged the Legislature to amend Section 196 in 1966, this time to expand the Department's authority to cover wage complaints submitted by domestic workers and non-profit employees. *See* Patrick Johnson Decl. at Ex. C (Bill Jacket 1966 Ch. 989). In a memorandum to the Governor dated March 17, 1966, the Senate's Chairman of the Committee on Labor and Industry explained:

> One of the major functions of the Labor Department is the assistance it provides to employees in collecting unpaid wages due them. In 1964, for example, the Department collective nearly half a million dollars for over 7,000 workers. There remain, however, two large groups of employees whose claims cannot be processed by the Department under the law as it is presently written—persons employed as domestics, and employees in non-profitmaking institutions.

> * * * *

> The bill is not designed to enable the Industrial Commissioner to invade the privacy of private homes and inspect for wage violations. It is intended only to permit the Industrial Commissioner to assist domestic workers when they file complaints with the Department of Labor that they have not received their wages.

> (*Id.* at Ex. C, pp. 9-10). Yet again, there is no mention of a private right of action.

As the foregoing makes clear, the legislative history surrounding such amendments to Section 191 (and its predecessor, Section 196) reveals that both the Legislature and the Department of Labor have historically viewed Section 191 as the source of the Department's authority to aid various categories of workers in the recovery of wages through the Department's Title 6 administrative powers, and not as a source of privately actionable rights.

Additionally, Section 191(1)(a)'s requirement for the payment of manual workers on a weekly basis is waivable. *See* NYLL § 191(1)(a)(ii).  The Commissioner of Labor may waive an employer's obligation to pay manual workers on a weekly basis, and pay them on a biweekly or semi-monthly basis as clerical and other "white collar" workers, on receipt of proof of the employer's

"continuing ability to meet its payroll obligations." *Id.* This view of Section 191(1)(a)'s frequency-of-pay requirements as being procedural, and not substantive, in nature is consistent with the Legislative commentary on Section 191 dating back to 1935 - that the purpose of Section 191 is not to ensure that payments are made weekly versus on some other schedule, but instead to ensure that employers make payroll payments at all. Implying a private right of action under the facts of this case - where full wages were not only paid, but paid on a bi-weekly schedule permissible for clerical and other workers - would not promote the protection of workers, would not further the legislative purpose of Section 191, and would otherwise interfere with the enforcement mechanism created by the New York Legislature.

Accordingly, Plaintiff's Complaint fails to state a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

Dated: August 17, 2021                                      Respectfully submitted,

/s/ Christopher M. Myatt
Christopher Myatt, Esq.
BPR No.: 024629
Martin, Tate, Morrow & Marston, P.C.
International Place, Tower II
6410 Poplar Avenue, Suite 1000
Memphis, TN 38119
Telephone: 901-522-9000
Facsimile: 901-527-3746
Email: cmyatt@martintate.com

And

Laurie M. Riley
Florida Bar No.: 657751
(Application for admission *Pro Hac Vice* will be forthcoming)
Jones Walker LLP
201 South Biscayne Boulevard, Suite 2600
Miami, FL 33131
Telephone: 305-679-5728
Facsimile: 305-679-5816
Email: lriley@joneswalker.com

And

Tracy E. Kern, Esq.
Louisiana Bar No.: 20246
(Application for admission *Pro Hac Vice* will be forthcoming)
Jones Walker LLP
201 St. Charles Avenue, 47th Floor
New Orleans, LA 70170
Telephone: 504-582-8134
Facsimile: 504-589-8134
Email: tkern@joneswalker.com

***Counsel for Defendant***

## CERTIFICATE OF SERVICE

I certify that on this 17th day of August, 2021, a true and correct copy of the foregoing pleading was filed electronically with the Clerk of Court of the United States District Court for the Western District of Tennessee by using the CM/ECF system.

/s/ Christopher M. Myatt
Christopher Myatt
